NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GLOBAL FRESH PRODUCE, INC., ET AL., : | |
| : | |
| Plaintiffs, : | Civil Action No. 11-01270 (CCC) |
| v. : | |
| : | OPINION |
| EPICURE TRADING, INC., ET AL., : | |
| : | |
| Defendants. : | |

**CECCHI**, District Judge.

This matter comes before the Court on the motion of Defendants Epicure Trading, Inc. ("Epicure") and J.B. Laverdure, Inc. ("Laverdure") to dismiss Plaintiffs' Complaint ("Complaint"). The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendants' motion to dismiss is granted and

Plaintiffs' Complaint is dismissed without prejudice. To the extent that Plaintiffs can amend their Complaint in accordance with this decision, Plaintiffs are granted fourteen (14) days in which to file an Amended Complaint which cures the pleading deficiencies discussed below.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff Global Fresh Produce, Inc. ("Global"), Plaintiff Al Finer Co., Inc. ("Finer") (collectively, "Plaintiffs"), and Defendant Epicure are corporations engaged in the interstate produce business and hold licenses under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499 ("PACA"). (Compl. ¶¶ 3, 4,5.) Laverdure is a Canadian corporation dealing in the

wholesale importing and distributing of fresh fruits and vegetables. (Compl. ¶ 6.) According to the Complaint, Laverdure also manages and oversees Epicure. (Compl. ¶ 6.)

From September 2009 to May 2010, Plaintiffs received and resold shipments of fruit, which had been imported into New Jersey by Defendants. (Compl. ¶ 8.) Plaintiffs claim that the shipments were placed with them on "open price, Price-After-Sale ('PAS') terms." (*Id.*) After receiving the fruit from Defendants, Plaintiffs would sell it on the wholesale market, obtaining the best available prices. (Compl. ¶ 9.) Upon selling the lots and obtaining the final sales prices, Plaintiffs reported the sales and settled the final price to be paid with an Epicure salesman. (Compl. ¶ 10.) In October 2010, Epicure's counsel sent a letter to each Plaintiff seeking USDA inspection certificates justifying a price reduction and seeking additional payments of more than $90,000 from Global and more than $40,000 from Finer should the documents not be provided.[1] (Compl. ¶ 12; Mandell Declaration, Aug. 22, 2011, ECF No. 25, Ex. A.) Epicure sent follow-up letters to Plaintiffs in January 2011, again requesting additional sums. (Mandell Decl., Aug. 22, 2011, ECF No. 25, Ex. B.) In its follow-up letter addressed to Global, Epicure offered to settle the matter for $50,000. (*Id.*) According to Plaintiffs, Defendants argue that the underlying transactions were fixed-price sales and that the original sales prices were only adjusted temporarily. (Compl. ¶ 14.) Furthermore, Plaintiffs claim that Defendants have threatened litigation if Global and Finer do not pay the additional sums. (*Id.*) Plaintiffs contend, however, that they performed all of their duties, finalized the sales prices with Epicure's salesman, and properly paid Epicure for each lot. (Compl. ¶ 13.)

---

[1] Plaintiffs submitted these letters with their opposition to Defendants' motion to dismiss. The letters do not convert this motion to dismiss to a motion for summary judgment pursuant to Rule 56, even though the Court has considered them in its decision. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1394 n. 2 (3d Cir. 1984) (in addition to reviewing the pleadings, courts "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" when deciding a motion to dismiss).

Defendants argue that there is no ongoing relationship between Plaintiffs and Epicure; that Plaintiffs have not sustained any damages related to their prior contractual relationship; that they have not pursued any formal action related to their "demands" for additional payments; and that Laverdure was not a party to the contractual "agreements" between Plaintiffs and Epicure. (Def. Br. 3, ECF No. 23)

On March 7, 2011, Plaintiffs filed a declaratory judgment action against Defendants in this Court pursuant to 28 U.S.C. § 2201. (Compl. ¶¶ 1, 19.) Plaintiffs seek an order from this Court declaring that "all sums due Defendants for the subject commodities have been paid in full, and that Defendants have no cause of action against Plaintiffs . . . for any additional funds." (Compl. ¶ 19.) On August 5, 2011, Defendants Epicure and Laverdure filed a Motion to Dismiss Plaintiffs' Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   STANDARD OF REVIEW

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Furthermore, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion [s]' devoid of 'further factual enhancement.'" *Iqbal,* 129 S. Ct. at 1949.

The burden of proof for showing that no claim has been stated is on the moving party. *Hedges v. U.S.,* 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991)). During a court's threshold review, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Rockefeller Ctr. Props., Inc.,* 311 F.3d 198, 215 (3d Cir. 2002). In general, the Federal Rules of Civil Procedure should be construed liberally so as to encourage ruling on the merits instead of technicalities: "This liberality is expressed throughout the Federal Rules of Civil Procedure and is enshrined in a long and distinguished history . . . . An inadvertant mistake in pleading will not be held against the pleader if another party has not been misled by the mistake or otherwise prejudiced." *Lundy v. Adamar of New Jersey,* 34 F.3d 1173, 1186 (3d Cir. 1994). Further, courts will not dismiss for failure to state a claim merely because the complaint miscategorizes legal theories or does not point to an appropriate statute or law to raise a claim for relief. *See Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 909 n. 10 (1990).

### III.   DISCUSSION

Defendants have filed a motion to dismiss Plaintiffs' Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants first argue that Plaintiffs have failed to demonstrate a "justiciable case or controversy" in support of their claim for declaratory relief. (Def. Br. 4.) Second, Defendants argue that Plaintiffs have failed to state a claim against Laverdure in particular because it was not a party to the underlying contracts between Plaintiff and Epicure. (Def. Br. 12.) The Court will address each of these arguments in turn.

#### A.  Declaratory Judgment

In Count I, Plaintiffs seek a declaration from the Court that they do not owe Defendants any additional sums of money. (Compl. ¶ 19.) "The Declaratory Judgment Act, 28 U.S.C. §§

2201 and 2202, . . . provides that a court 'may declare the rights . . . of any interested party,' and contemplates that district courts will exercise discretion in determining whether to entertain such actions." *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000) (internal citations omitted). The Act has been characterized as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (internal quotations omitted).

A district court may render a declaratory judgment only when an "actual controversy" exists. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). The "actual controversy" requirement under the Declaratory Judgment Act corresponds with the "case or controversy" requirement of Article III of the United States Constitution. *Id.* A "controversy" "must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* at 240–41. In determining whether a case satisfies the case-or-controversy requirement, courts consider "'whether the facts alleged, under *all the circumstances*, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, (2007) (internal quotation omitted)(emphasis added).

"[T]he Supreme Court has emphasized that a fear of future harm that is only subjective is not an injury or threat of injury caused by the [d]efendant that can be the basis of an Article III case or controversy." *Prasco,* 537 F.3d at 1338–39 (citing *Los Angeles v. Lyons,* 461 U.S. 95 (1983)); *see also Indium Corp. of Am. v. Semi–Alloys, Inc.,* 781 F.2d 879, 883 (Fed. Cir. 1985) ("A purely subjective apprehension of an infringement suit is insufficient to satisfy the actual controversy requirement."). Instead, "it is the reality of the threat of . . . injury that is relevant to the standing inquiry, not the [p]laintiff's subjective apprehensions." *Id.* (citing *Lyons,* 461 U.S.

at 107 n. 8; *Laird v. Tatum,* 408 U.S. 1, 13–14 (1972)). "In making its determination as to whether declaratory relief should be granted, the court "'must ask whether the requested declaratory judgment will (1) clarify and settle legal relations in issue and (2) terminate and afford greater relief from the uncertainty, insecurity, and controversy giving rise to the present action.'" *Delaware State University Student Housing Foundation v. Ambling Management Co.,* 556 F. Supp. 2d 367, 373 (D. Del. 2008).

      Here, Plaintiffs allege that Defendants have demanded additional payments pursuant to a contract between Plaintiffs and Epicure, which has been terminated. (Compl. ¶ 8; Def. Br. 6.) In support of this allegation, Plaintiffs provided several letters to the Court in which Defendants' counsel sought USDA inspection certificates in order to justify Plaintiffs' request for a price reduction and Defendants sought $96,011.24 from Global Fresh and $48,300.98 from Finer if Plaintiffs did not provide those documents. (Mandel Decl., ECF Doc. No. 10, Ex. A.)  In the letter to Global Fresh, Defendants' counsel offered to settle for $50,000, "with a view of obviating costly legal proceedings." (Letter from Gordon Zelman, Jan. 28, 2011, Mandel Decl., ECF Doc. No. 10, Ex. B.)  Plaintiffs claim that these letters are evidence that Defendants are threatening imminent litigation and therefore, there is an actual controversy at issue. (Plaintiff's Brief 6, ECF Doc. No. 26.)

      Defendants argue that an "actual controversy" does not exist because Plaintiffs have not sustained any damages related to their contractual relationship. (Def. Br. 3-4, 5, 6-11.)  They further claim that they have not instituted any action or proceeding against Plaintiffs for the additional sums, nor have they threatened litigation. (Def. Br. 3, 5.)  Defendants also assert that Plaintiffs' claims relate to a prior contractual relationship, which has since been terminated.

6

(Def. Br. 5.) As such, declaratory relief would not affect their current or future behavior and therefore, it should not be granted. (Def. Br. 7-8.)

In support of their argument, Defendants cite to *Delaware State University Student Housing Foundation v. Ambling Management Co.*, 556 F. Supp. 2d 367 (D. Del. 2008). In that case, plaintiff sought a declaration from the court stating that plaintiff properly terminated its contract with defendant. *Delaware State*, 556 F. Supp. 2d at 372. The court declined to grant declaratory relief because "there [was] no present behavior . . . to affect as [the] contracts . . . ha[d] been terminated." *Id.* at 375. The court found that ultimately, plaintiff's question would be answered with the resolution of its breach of contract claim. *Id.* The court in *Delaware State* stated that "although . . . declaratory judgment may be sought in order for the court the interpret a written contract," courts will not grant a declaratory judgment unless the parties have an ongoing "contractual relationship[] in which declaratory relief could affect the then-present behavior of the contracting parties." *Id.* at 374. Here, Epicure's contracts with Plaintiffs have been terminated. As such, the parties do not have an ongoing relationship and declaratory relief will not affect the Defendants' present behavior. *See id.* at 375.

Plaintiffs also contend that Defendants have threatened imminent litigation in their letters requesting additional payment. Declaratory relief is warranted in cases where litigation is "imminent and 'inevitable.'" *See* 10B C. Wright, A. Miller, & M. Kane, *Federal Practice & Procedure* § 2751 (3d ed. 2010). However, the threat of litigation must be more than speculative. *See Japan Gas Lighter Ass'n v. Ronson Corp.*, 257 F. Supp. 219 (D.N.J. 1966) ("[T]he plaintiff's fearful conjecture that at some future time the defendant may initiate . . . proceedings will not support the suit."). Here, the court finds that litigation is not "imminent and inevitable." The letters sent by Defendants sought payment to the extent documentation

justifying a price adjustment, USDA inspection certificates, was not provided. While Defendants offered to settle in order to "obviat[e] costly legal proceedings," this language does not rise to the level of "imminent" litigation. Therefore, Defendants' motion to dismiss is granted. To the extent that Plaintiffs can amend their Complaint in accordance with this Opinion, they are granted fourteen (14) days in which to file an amended Complaint which cures the pleading deficiencies.

### B. Claims against J.B. Laverdure, Inc.

Defendants' second argument in support of its motion to dismiss is that Plaintiffs have not made any valid claims against Laverdure, in particular. (Def. Br. 12.) Plaintiffs claim that Laverdure oversaw, controlled, and managed Epicure, so that "any difference or separation between them was a fiction." (Compl. ¶ 7.) Defendants claim, however, that Laverdure was not a party to the contract between Epicure and Global and therefore, it is not liable for Epicure's contractual obligations. (Def. Br. 12.) Furthermore, Defendants argue that even if Laverdure were liable for Epicure's contractual obligations, Plaintiffs have not made any breach of contract claims against Epicure, nor have they asserted that they sustained any damages. (*Id.* at 12-13.)

While it is not entirely clear, Plaintiffs appear to characterize the allegations against Laverdure as being sufficient to pierce its corporate veil. A plaintiff may state a claim for piercing the corporate veil by establishing that: "(1) one corporation is organized and operated as to make it a mere instrumentality of another corporation, and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law." *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171-72 (3d Cir. 2002) (citing *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 149 (3d Cir. 1988)); *see also Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir.2001) (piercing

the veil is appropriate "when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime ... or when the parent so dominated the subsidiary that it had no separate existence.") (internal quotation marks omitted)).

In order to pierce the corporate veil, a plaintiff must allege that the parent "completely dominate[s] the finances, policy, and business practice with respect to the subject transaction" to such a degree that the subsidiary has "no separate mind, will, or existence of its own." *Craig*, 843 F.2d at 150. The relevant factors include:

> Gross undercapitalization . . . failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of the funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders.

*Id.* (quoting *American Bell, Inc. v. Fed'n of Tel. Workers*, 736 F.2d 879, 886 (3d Cir. 1984)); *Foodtown*, 296 F.3d at 172. It is well-established that "mere ownership of a subsidiary does not justify the imposition of liability on the parent." *See Pearson*, 247 F.3d at 484; *Marzano v. Computer Sci. Corp.*, 91 F.3d 497, 513 (3d Cir. 1996) (citing *New Jersey Dep't of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473, 468 (1983)); *see also Craig*, 843 F.2d at 150 (a plaintiff must allege control by a parent over a subsidiary which is more than a "mere majority or complete stock control").

For instance, in *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, the complaint alleged that a corporation and its alleged alter ego: "failed to maintain formal barriers between the management structures;" "commingled funds and other assets;" "failed to observe other corporate formalities;" "shared twelve of thirteen common directors;" shared the same shareholders, the same principal office, and registered office; and were structured such that the

Board of Directors of one corporation "was dominated and controlled" by the alter ego's Board. *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,* 296 F.3d 164, 172 (3d Cir. 2002) (internal citations omitted). The Third Circuit found these allegations sufficient to meet the first prong of the veil-piercing test.

Plaintiffs allege that their claims against Laverdure are based on the following facts: (1) both companies list the same principal officer, Jean-Francois Laverdure; (2) the salesperson whom they dealt with, Eric Lacasse, was an employee of Laverdure; and (3) while Epicure was a California corporation and had a mailing address in Florida, it also operated out of one of Laverdure's offices in Canada. (Mandell Decl., ECF Document No. 10, ¶ 4.)

The Court finds that the Complaint does not contain allegations sufficient to suggest that Laverdure "completely dominated" Epicure or used Epicure to perpetrate a fraud or to avoid liability. According to the invoice provided by Plaintiffs, Plaintiffs only had a contract with Defendant Epicure and Epicure lists an address in Philadelphia. (Mandel Decl., ECF Document No. 25, Ex. D.) Furthermore, all letters from Defendant Epicure's counsel refer only to Epicure. (*See* Mandel Decl., ECF Doc. No. 10, Exs. A, B.) Even if Laverdure has the same principal officer as Epicure and used the same salesperson, Plaintiff has not alleged that Laverdure failed to maintain appropriate boundaries between Epicure and Laverdure. Therefore, the Court finds that Plaintiff cannot pierce the corporate veil under this set of facts.

While it is again unclear, Plaintiff's claims may also be construed as claiming that Laverdure is liable for Epicure's actions because Epicure was acting as Laverdure's agent. Under an agency theory, "the issue of liability rests on the amount of control the parent corporation exercises over the actions of the subsidiary. The parent corporation will be held liable for the activities of the subsidiary only if the parent dominates those activities." *Phoenix*

*Canada Oil Co. v. Texaco, Inc.,* 658 F. Supp. 1061, 1084 (D. Del. 1987); *Henry v. St. Croix Alumina, LLC,* No. 1999-0036, 2007 WL 6030275, at *9 (D. Vi. Aug. 10, 2007).

Even if this Court were to construe the allegation that Laverdure oversaw, controlled, and managed Epicure, so that "any difference or separation between them was a fiction" as establishing an agency theory, the claim fails. (Compl. ¶ 7.) That allegation, and the others related to Laverdure's operations, do not set forth "enough facts to raise a reasonable expectation that discovery will reveal evidence of" an agency relationship. *See Phillips,* 515 F.3d at 234. Because the Complaint fails to set forth an adequate basis for Laverdure's liability, Laverdure is dismissed without prejudice. In an effort to cure their pleading deficiencies, Plaintiffs may replead as to Laverdure within fourteen (14) days.

## IV.   CONCLUSION

Based on the reasons set forth above, Defendants' motion to dismiss is granted without prejudice. Plaintiffs are granted fourteen (14) days in which to file an Amended Complaint which cures the pleading deficiencies in accordance with this decision. An appropriate Order accompanies this Opinion.

**DATED:** March 16, 2012

                                                                    _____
                                                                    **CLAIRE C. CECCHI, U.S.D.J.**